UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANJESHNI DEVI,<br><br>        Plaintiff,<br><br>v.<br><br>STANFORD HEALTH CARE,<br><br>        Defendant. | Case No. 4:24-cv-03897-KAW<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT AND MOTION FOR STRIKE**<br><br>Re: Dkt. No. 25 |

On March 10, 2025, Defendant Stanford Health Care filed a motion to dismiss the ninth through thirteenth causes of action and to strike related allegations in the first amended complaint. (Dkt. No. 25.)[1]

Upon review of the moving papers, the Court finds this matter suitable for resolution without oral argument pursuant to Civil Local Rule 7-1(b), and, for the reasons set forth below, GRANTS the motion to dismiss.

## I. BACKGROUND

Plaintiff Sanjeshni Devi worked for Defendant Stanford Health Care ("SHC") in various capacities from 2019 until her termination in May 2024. (First Am. Compl., "FAC," Dkt. No. 24 ¶¶ 8-9, 21-22.) On May 30, 2024, SHC terminated Plaintiff's employment for "uttering a racial epithet, the 'N word', at work" and using other inappropriate language ("shit" and "damn") in the presence of other employees. (FAC ¶ 22.) On June 28, 2024, Plaintiff filed her original complaint asserting multiple causes of action against SHC, including violation of the Fair Labor Standards

---

[1] Defendant also filed a request for judicial notice (Dkt. No. 25-2), in which Defendant asks that the Court take judicial notice of the original complaint. The request is DENIED, because judicial notice is not required for filings in the same lawsuit.

Act, unpaid overtime wages, unpaid meal period wages, waiting time penalties, itemized wage statement violations, retaliation under Labor Code section 1102.5, religious discrimination under the Fair Employment and Housing Act ("FEHA"), and race discrimination under FEHA. (Dkt. No. 1.)

On February 6, 2025, Plaintiff filed a first amended complaint, in which she added five causes of action: (9) Failure to Prevent Harassment, Discrimination, and Retaliation in Violation of the FEHA; (10) Intentional Infliction of Emotional Distress ("IIED"); (11) Negligent Infliction of Emotional Distress ("NIED"); (12) Distribution of Private Sexually Explicit Materials; and (13) Blacklisting. (FAC ¶¶ 89-118.) In sum, Plaintiff alleges that her supervisor Rozin Nisha engaged in a pattern of harassment and retaliation against her. (FAC ¶¶ 23-24.) Plaintiff claims that, in March 2022, she began dating Ms. Nisha's son, Mohammed Khan, a co-worker in the Environmental Science department ("EVS"), who informed her that he was separated from his wife, Madina Azam, who purportedly lived in Canada. (FAC ¶ 24.) Plaintiff alleges that in Summer 2022, Ms. Nisha harassed, abused, and retaliated against her by assigning Plaintiff to more difficult jobs and blocking her transfer requests. (FAC ¶¶ 26-27.) In October 2022, after Plaintiff broke up with Mr. Khan, she alleges that Ms. Nisha instructed Mr. Khan to file a harassment complaint against her and told Plaintiff she would "get even." (FAC ¶ 27.)

Plaintiff alleges that in the first quarter of 2023, she applied for several transfer positions, including Operating Room Assistant ("ORA") supervisor, but her transfers were delayed until February 2023 because Ms. Nisha provided negative references. (FAC ¶ 28.) She alleges that in 2023, Ms. Nisha started referring to Plaintiff as her "second daughter in law" and a "home breaker," and told SHC employees that Plaintiff had three daughters and was "using her son for money." (FAC ¶ 29.)

On December 16, 2024, Plaintiff alleges her supervisor at her new place of employment, Kaiser Santa Rosa, received an unsolicited email from someone not identified in the FAC, divulging confidential information about her past employment and a workers compensation claim at SHC and accusing her of harassing Ms. Azam. (FAC ¶ 35.) Plaintiff further claims that during her subsequent employment at Kaiser, "obscene, malicious, and threatening text messages" were

2

1 sent directly to Plaintiff and identified her ex-boyfriend, Mr. Khan, Ms. Azam (his wife), and Ms.
2 Nisha (his mother) "in connection with Plaintiff's employment at Stanford." (FAC ¶ 36.) Mr.
3 Khan also allegedly berated Plaintiff with unwelcome telephone calls. *Id.* Plaintiff further alleges
4 that Defendant's employees subjected her to cyber harassment and threats, including social media
5 posts featuring nude photographs of her, defamatory statements, and other derogatory statements
6 about her family. (FAC ¶¶ 38-41.) The FAC does not identify the individuals who allegedly posted
7 or transmitted the social media content described in the FAC. (FAC ¶¶ 38-41.)

8       On March 10, 2025, Defendant filed a motion to dismiss the new causes of action and to
9 strike certain allegations pertaining to those allegations. (Def.'s Mot., Dkt. No. 25.) On March 24,
10 2025, Plaintiff filed an opposition. (Pl.'s Opp'n, Dkt. No. 30.) On March 31, 2025, Defendant
11 filed a reply. (Def.'s Reply, Dkt. No. 32.)

## II.  LEGAL STANDARD

### A.  Motion to Dismiss

Under Federal Rule of Civil Procedure 12(b)(6), a party may file a motion to dismiss based on the failure to state a claim upon which relief may be granted. A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

In considering such a motion, a court must "accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted), and may dismiss the case or a claim "only where there is no cognizable legal theory" or there is an absence of "sufficient factual matter to state a facially plausible claim to relief." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Navarro*, 250 F.3d at 732) (internal quotation marks omitted).

A claim is plausible on its face when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). In other words, the facts alleged must demonstrate "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not

3

do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Threadbare recitals of the elements of a cause of action" and "conclusory statements" are inadequate. *Iqbal*, 556 U.S. at 678; *see also Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996) ("[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim."). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully . . . When a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (internal citations omitted).

Generally, if the court grants a motion to dismiss, it should grant leave to amend even if no request to amend is made "unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (citations omitted).

### B. Motion to Strike

Federal Rule of Civil Procedure 12(f) provides that, on its own or on motion made by a party, a "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "The function of a Rule 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial...." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010). "A matter is immaterial if it has no essential or important relationship to the claim for relief pleaded," and "[a] matter is impertinent if it does not pertain and is not necessary to the issues in question in the case." *Barnes v. AT & T Pension Ben. Plan-Nonbargained Program*, 718 F. Supp. 2d 1167, 1170 (N.D. Cal. 2010) (citing *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993)). Motions to strike, however, "are generally disfavored because the motions may be used as delaying tactics and because of the strong policy favoring resolution of the merits." *Id.* (citation omitted). Thus, "[b]efore a motion to strike is granted the court must be convinced that there are no questions of fact, that any questions of law are clear and not in dispute, and that under no set of circumstances could the claim or defense

4

succeed." *RDF Media Ltd. v. Fox Broad. Co.*, 372 F. Supp. 2d 556, 561 (C.D. Cal. 2005). As with a motion to dismiss, "the court must view the pleading under attack in the light most favorable to the pleader." *Id.* (citation omitted). "Ultimately, whether to grant a motion to strike lies within the sound discretion of the district court." *Cruz v. Bank of New York Mellon*, No. 12-CV-00846-LHK, 2012 WL 2838957, at *2 (N.D. Cal. July 10, 2012) (citing *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010)).

### III.   DISCUSSION

#### A.   Motion to Dismiss

As an initial matter, Defendant takes the position that the new facts alleged took place before the December 20, 2024 amended pleadings deadline. (Def.'s Mot. at 5.) Defendant, however, saw the redline version of the proposed amended complaint and then stipulated to the amendment. (*See* Stipulation, Dkt. No. 20.) The stipulation states that the parties agree that "Plaintiff and her counsel have proceeded in a diligent manner and represent that Plaintiff has good cause to modify the deadline to amend the pleadings and good cause to seek leave to file a First Amended Complaint." *Id.* at 2:24-26. If Defendant took issue with Plaintiff alleging facts that were known to her prior to the deadline, SHC should not have stipulated to the amendment. Thus, the Court declines to dismiss any portion of the first amended complaint on this basis.

##### i.   Ninth Cause of Action: Failure to Prevent Harassment, Discrimination, and Retaliation in violation of the California Fair Employment and Housing Act ("FEHA")

###### a.   Claim as currently pled

In the amended complaint, Plaintiff alleges a FEHA violation for failure to prevent discrimination, harassment, or retaliation based on Ms. Nisha's treatment of Plaintiff, which Plaintiff claims created a toxic workplace, and which Defendant failed to prevent. (FAC ¶¶ 89-93.)

Under the FEHA, an employer's duty to take reasonable steps to prevent discrimination, harassment, or retaliation arises only if a plaintiff establishes an underlying claim of actionable discrimination, harassment, or retaliation. *Trujillo v. N. Cnty. Transit Dist.*, 63 Cal. App. 4th 280, 288–89, *as modified* (May 12, 1998). Where a plaintiff fails to establish a primary violation, a claim for failure to prevent cannot stand. *Id.* at 288-89 ("We do not believe the statutory language

5

supports recovery on such a private right of action where there has been a specific factual finding that no such discrimination or harassment actually occurred at the plaintiffs'[] workplace.").

Defendant moves to dismiss this claim on the grounds that the operative complaint is devoid of facts establishing that any of the alleged harassing conduct was based on her protected classes, and, therefore, Plaintiff fails to allege a primary FEHA violation. (Def.'s Mot. at 8.) Instead, Defendant argues that Plaintiff merely describes a personal conflict arising from her private relationship with Mr. Khan and his mother, Ms. Nisha, and the alleged professional fallout. *Id.* (citing FAC ¶¶ 23-32.)

In opposition, Plaintiff concedes that "Ms. Nisha created a toxic workplace for Plaintiff based on this relationship." (Pl.'s Opp'n at 8.) Plaintiff then argues that this constituted sex and gender harassment, which "resulted from a relationship that originated with Defendant's employment." *Id.* Plaintiff explained that Mr. Khan's wife, Madina Azam, was employed at Stanford even though Mr. Khan deceived Plaintiff as to their marital status by representing that he was separated. *Id.* Ms. Nisha, Plaintiff's supervisor, was Mr. Khan's mother, and she had full knowledge of Plaintiff's relationship with her son. *Id.* at 8-9. Thus, Plaintiff argues that Ms. Nisha was acting within the scope of her employment when she "harassed, abused, retaliated, and threatened to 'get even' with Plaintiff." *Id.* at 9. This argument is not well taken, because this conflict is not based on Plaintiff's gender at all. Rather, it is based on Plaintiff's romantic involvement with Ms. Nisha's son.

Next, Plaintiff contends that this constitutes discrimination based on marital status, which is similarly unavailing. (*See* Pl.'s Opp'n at 9-10.) While marital status is protected under FEHA, Plaintiff does not allege that she was being harassed for being single. Rather, she alleges that she was harassed based on having an affair with a married man, who was also the son of her supervisor. (*See* FAC ¶ 91.) Thus, Plaintiff's reliance on *Smith v. Fair Employment & Housing Commission*, 12 Cal. 4th 1143, 1156 (1996), is misplaced. (*See* Pl.'s Opp'n at 10-11.) In *Smith,* the California Supreme Court found that FEHA protected unmarried cohabitants and prohibited a landlord from refusing to rent to an unmarried, cohabitating couple. 12 Cal. 4th at 1158. Again, here, Plaintiff's marital status is not the issue. The problem is that she was involved with a

6

1 married man, who was the son of her supervisor. Indeed, Plaintiff presumably would have endured
2 similar treatment if she had been married.  Thus, Plaintiff cannot sufficiently allege discrimination
3 based on marital status, sex or gender, which is fatal to the ninth cause of action as currently pled.

           b.   <u>Whether Plaintiff can save the claim based on other facts in the operative complaint.</u>

6         Finally, Plaintiff's opposition cites to facts contained elsewhere in the complaint pertaining
7 to actions related to race discrimination and for participating in a coworker's race discrimination
8 investigation as separate bases for this claim. (*See* Pl.'s Opp'n at 11 (citing FAC ¶¶ 14-16, 17-
9 22).)  In reply, Defendant argues that Plaintiff should be precluded from making these allegations,
10 because Plaintiff should have pled these facts in the amended complaint. (Def.'s Reply at 2.)  The
11 Court agrees.

12         While Plaintiff "incorporates" the preceding paragraphs by reference, that does not satisfy
13 Federal Rule of Civil Procedure 8 or *Twombly/Iqbal* pleading standard because it does not provide
14 fair notice of the facts underlying the specific claim. *See, e.g., Comcast Cable Commc'ns, LLC v.*
15 *OpenTV, Inc.,* 319 F.R.D. 269, 272 (N.D. Cal. 2017) (dismissed 10 claims due to boilerplate
16 incorporation language); *Deerpoint Grp., Inc. v. Agrigenix, LLC*, 345 F. Supp. 3d 1207, 1234 n. 15
17 (E.D. Cal. 2018) ("However, incorporating literally all 143 preceding paragraphs, without specific
18 reference to either disparagement or Paragraph 81, does not give Defendants (or the Court) fair
19 notice of the factual bases of the IIPEA claim.") (citing *Weiland v. Palm Beach Cnty. Sheriff's*
20 *Office*, 792 F.3d 1313, 1321-23 (11th Cir. 2015).)

21         Furthermore, since the Court previously issued a case management scheduling order that
22 set the amended pleading deadline as December 20, 2024, Plaintiff must first satisfy Rule 16(b)'s
23 good cause standard before being given leave to amend. *Johnson v. Mammoth Recreations, Inc.*,
24 975 F.2d 604, 607-08 (9th Cir. 1992) ("Once the district court has filed a pretrial scheduling order
25 pursuant to Federal Rule of Civil Procedure 16 which established a timetable for amending
26 pleadings[,] that rule's standards control[].").  This is not saved by the parties' stipulation for
27 amendment, because these facts were not alleged in connection with this cause of action in the
28 amended complaint.  "A court's evaluation of good cause is not coextensive with an inquiry into

United States District Court
Northern District of California

the propriety of the amendment under Rule 15." *Johnson*, 975 F.2d at 609 (internal quotation omitted). Rather, the "'good cause' standard primarily considers the diligence of the party seeking the amendment." *Id.* "[C]arelessness is not compatible with a finding of diligence and offers no reason for a grant of relief." *Id.* Here, Plaintiff was aware of the facts at the time the first amended complaint was filed, because they are alleged in connection with her race discrimination claims. Thus, Plaintiff cannot show diligence, which belies the good cause required by Rule 16 for granting leave to amend.

Accordingly, the ninth cause of action is dismissed without leave to amend.

### ii. Intentional Torts: Tenth and Twelfth Causes of Action

Plaintiff alleges two intentional torts in the tenth and twelfth causes of actions: intentional infliction of emotional distress and the distribution of private sexually explicit materials. (FAC ¶¶ 94-99; 106-111.) Defendant moves to dismiss these claims on the grounds that an employer cannot be held liable for the intentional torts committed by an employee unless the conduct occurred within the scope of employment. (Def.'s Mot. at 9, 11.)

In opposition, Plaintiff argues that the harassment occurred within the scope of employment, ostensibly because they all worked at SHC. (Pl.'s Opp'n at 12.) The Court disagrees.

The California Supreme Court has articulated that "the employer will not be held liable for an assault or other intentional tort that did not have a causal nexus to the employee's work." *Lisa M. v. Henry Mayo Newhall Mem'l Hosp.*, 12 Cal. 4th 291, 297 (1995). In other words, "[t]he employer is not liable if the employee substantially departs from his duties for purely personal reasons…." *John R. v. Oakland Unified Sch. Dist.*, 48 Cal. 3d 438, 447 (1989). "That the employment brought tortfeasor and victim together in time and place is not enough." *Lisa M.,* 12 Cal. 4th at 298. Here, the alleged harassment is rooted in the purely personal conflict between Plaintiff, Ms. Nisha, Mr. Khan, and Ms. Azam. The fact that everyone worked for SHC is not sufficient to render the conduct within the scope of employment and impute respondeat superior liability on Defendant. Moreover, the alleged social media harassment occurred post-termination, and Plaintiff cannot relate that conduct to any of Defendant's employment practices. (*See* FAC ¶¶

1  95, 107; *see also* Pl.'s Opp'n at 12-13.)

2  Accordingly, the tenth and twelfth causes of action are dismissed without leave to amend.

###     iii.    Eleventh Cause of Action: Negligent Infliction of Emotional Distress

The eleventh cause of action is for negligent infliction of emotional distress. (FAC ¶¶ 100-105.) Defendant moves to dismiss on multiple grounds, including that SHC did not owe Plaintiff a duty of care after her termination. (Def.'s Mot. at 10.) While the complaint does not specify which facts support this claim, Plaintiff's opposition argues, without citing to any legal authority, that Defendant owed her a duty of care after her termination to prevent the harassment. (Pl.'s Opp'n at 13.) The Court disagrees.

Accordingly, the eleventh cause of action is dismissed without leave to amend.

###     iv.    Thirteenth Cause of Action: Blacklisting

The thirteenth cause of action is for blacklisting in violation of California Labor Code § 1050. (FAC ¶¶ 112-118.) This claim alleges that Defendant and its unidentified, employees and agents attempted to prevent Plaintiff from obtaining full time employment by misrepresenting Plaintiff's qualifications, background, and experience to Kaiser Permanente. *See ids.* The operative complaint, however, also alleged that she was notified by her current supervisor on December 16, 2024, that Kaiser received an email divulging confidential details about Plaintiff's employment at SHC. (FAC ¶ 35.) In opposition, Plaintiff clarified that she alleges that her personnel file information was sent to Kaiser, and that information was within Ms. Nisha's managerial responsibility. (Pl.'s Opp'n at 15.) Plaintiff explains that the misrepresentations pertained to the cause of her termination and false accusations that Plaintiff harassed Ms. Azam. *Id.* Plaintiff does not, however, explain when this email was sent in relation to her hiring at Kaiser—whether it was before or after her hire.

Defendant again argues that any such alleged conduct was beyond the scope of employment. (Def.'s Mot. at 12-13.) The Court does not necessarily agree assuming that Ms. Nisha was a custodian of or had access to Plaintiff's personnel file, and information contained therein was transmitted to Kaiser.

Nonetheless, Plaintiff's allegations, are not properly pled in connection with this cause of

action. California Jury Instruction No. 2711 sets forth the elements of this claim:

> 1. That after [*name of plaintiff*]'s employment with [*name of defendant*] ended, [*name of defendant*] made [a] representation(s) to [*name of prospective employer*] about [*name of plaintiff*];
>
> 2. That [*name of defendant*]'s representation[s] [was/were] not true;
>
> 3. That [*name of defendant*] knew the representation[s] [was/were] not true when [he/she/nonbinary pronoun/it] made [it/them];
>
> 4. That [*name of defendant*] made the representation[s] with the intent of preventing [*name of plaintiff*] from obtaining employment;
>
> 5. That [*name of plaintiff*] was harmed; and
>
> 6. That [*name of defendant*]'s conduct was a substantial factor in causing [*name of plaintiff*]'s harm.

CACI No. 2711, Judicial Council of California Civil Jury Instructions (2025 edition). Based on the allegations in the operative complaint, it is unclear what information from her personnel file regarding the cause of her termination were false, and whether Plaintiff can allege that she suffered harm in connection with misrepresentations considering her employment at Kaiser. Finally, a cognizable claim for blacklisting requires that the representations be made to a prospective, rather than current employer, and it appears that the email may have been sent after she was employed. *See Kelly v. General Telephone Co.*, 136 Cal.App.3d 278, 288-289 (1982) (Only misstatements made to potential employer is actionable under Labor Code § 1050).

Thus, this claim is dismissed, but Plaintiff is given leave to amend to allege sufficient facts in support of the blacklisting claim. If Plaintiff cannot plausibly allege each element of the claim, including that the representations were made to a prospective employer and that she was harmed, she should not file a second amended complaint.

**B. Motion to Strike**

Since the Court has dismissed the claims pertaining to Plaintiff's interpersonal relationship with Mr. Khan and the fallout that ensued, the Court GRANTS Defendant's motion to strike Paragraphs 23-32 pursuant to Rule 12(f) on the grounds that it is immaterial, impertinent, and scandalous. (*See* Def.'s Mot. at 14.)

### IV. CONCLUSION

For the reasons set forth above, the Court GRANTS the motion to dismiss, and dismisses the ninth, tenth, eleventh, twelfth causes of action with prejudice. The thirteenth cause of action is dismissed with leave to amend. Additionally, the motion to strike is GRANTED and paragraphs 23-32 of the first amended complaint are STRICKEN.

If Plaintiff intends to amend the thirteenth cause of action, she must file a second amended complaint within 14 days of this order. If Plaintiff does not timely file a second amended complaint, Defendant shall file an answer to the first amended complaint within 15 days of the deadline to amend.

IT IS SO ORDERED.

Dated: June 6, 2025

KANDIS A. WESTMORE
United States Magistrate Judge

11